Thank you, your honors. Thank you. Good morning. Morning, your honor. Morning, your honor. The court is now going to call case number 19-2896, United States v. Moultrie. You have with you Judge Kenneth Ripple by video and audio, Judge Barrett by audio, and I'm Judge Mike Brennan by video and audio. We're going to begin, Mr. Patton, with you as counsel for the appellant. Thank you, your honor. Your honor, in this case, the district judge sentenced a 20-year-old young man who had never served a term of imprisonment before to seven years of imprisonment. And it's our position that that was just substantively not reasonable. And while I understand that substantive reasonableness is an abuse of discretion standard, and that's deferential, it doesn't mean that there's no review and that it's no standard. And the district judge has to give reasons for the variance that are both individual to the case and that support the magnitude of the variance. And for us here, we're challenging the magnitude of the variance. I'm not saying they weren't individualized. And at bottom, everything Judge Darrow pointed to to support an upward variance had already been calculated into the guidelines or had been rejected as a proper enhancement under the guidelines. And there were certainly aggravating factors here. There's no question about that. Mr. Moultrie ran into a house and got into a standoff, but he got two offense levels for that. There was an obliterated serial number, but he got four levels enhancement for that. He committed another offense with a gun, shooting at somebody else, but he got a four-level enhancement for that. So without any of those enhancements, he was at a base offense level of 14. And if you take two levels off for acceptance, you're at 15 to 21 months. And all those enhancements took him up to 46 to 57 months. And also very problematic with using the obstruction of justice hypothetical guideline, as Judge Darrow called them, was she said she's going to use a hypothetical guideline and say that she was going to give two levels because he attempted to obstruct justice. But here, the original guide, the first amended pre-sentence report included a two-level obstruction of justice enhancement for the statements that were made on the phone calls from the jail. But defense counsel filed a very detailed legal objection, arguing why the government hadn't met its burden to show that those calls showed a specific intent to obstruct justice, and the government hadn't met its burden. The government agreed. When the second revised pre-sentence report came out, it didn't have that obstruction of justice enhancement, and the government didn't object to that. And nor did Judge Darrow, when she was calculating the guidelines, say that she felt that the proper application of the guidelines required the application of the obstruction of justice enhancement. And so what ended up happening then is that the AUSA in the case, it was very interesting, the way he put his sentencing recommendation, is he asked for at least the top of the guideline range. And when Judge Darrow asked him, well, what do you mean by that? And, you know, what are you asking for? Are you asking for a variance? He said, well, I'm asking for the high end of the guideline range, at least the high end of the guideline range. Then the court asked him if he had authority to seek an upward variance, and the AUSA said he didn't have that authority, but if he phrased it in the way of at least the high end, that could get around the requirement that he get permission to ask for a variance. And I think it's really important to that because it then turns the review of the sentence on its head. Because this court has held it's the government's burden to prove the obstruction of justice enhancement applies. And when it comes to trying to obstruct and tamper with witnesses, it's the government's burden to prove a specific intent. And by agreeing that they hadn't met that burden, or at least not objecting to that being taken out, but then doing a variance on a quote unquote hypothetical guideline that included the application of that enhancement because of these phone calls. Now the government says, hey, it's the defendant's burden to show the sentence is unreasonable and that's very deferential. They've gotten to flip this on its head. And so if you affirm that and tell the district judge that it's okay to proceed that way, you are giving a roadmap and in fact incentivizing to the judge to just not apply guideline enhancements, not have to go through and make actual rulings that legal rulings that could then be appealed under procedural reasonableness. And de novo review of, you know, as the government met its legal burden of applying this enhancement. Now it says, oh, defense, you have to now make a substantive reasonableness challenge and burden on its head. If the district judge had calculated the guideline range to your satisfaction, and then had said, I understand what the guideline range is. But I don't think that this guideline range really is a good vehicle for my sentencing this particular person for two reasons. First of all, I don't think the guideline range adequately takes care of the possibility of recidivism. And secondly, I think, frankly, the totality of the circumstances facing me is far greater than the sum of its parts in terms of its seriousness, in terms of its needs for deterrence and for vindicating the public justice. So I'm going to impose a sentence of 84 months. Would there be anything legally wrong with that sentence? I would say yes, Your Honor, if she didn't point to the specific facts that led her to conclude that the guidelines taken as a whole didn't provide a sufficient punishment. That, I would argue, would not be a sufficient statement of the reasons for the variance. You have to give specific reasons. And here, when the specific reason is that there's this enhancement that could apply, but everybody agrees doesn't apply. But I'm going to increase it because of that. I think that's problematic. Now, Your Honor, certainly the judge is able to say, I have a policy disagreement with the guidelines. They're allowed to do that. But that's not what Judge Darrow said here. She didn't say, I have a policy disagreement with the obstruction of justice guideline and the way it's written. She basically purported to apply it, but not really just under hypothetical, again, thereby avoiding any kind of review on whether or not it was appropriately applied and throwing us into substantive reasonableness. It seems to me that what got her in trouble, at least with you and your brief, is that she tried to justify the greater sentence in terms of the framework of the guidelines. Was she required to do so? No, Your Honor, she was not. She was not, right? But I would slightly disagree with the premise of your question, Your Honor, in that clearly the judge can look to the guidelines to help explain a variance. And judges do that quite often. But where we felt the judge in Dufield, she went wrong, is to say that an enhancement gets applied. We file a legal objection to it. Everybody agrees the legal objection is correct. And it doesn't apply. To then say, oh, one of the reasons I'm giving you an above-guideline sentence is this reason that you obstructed justice, and that's a two-level enhancement, so I'm giving you a two-level enhancement. That doesn't seem to make a lot of sense, Your Honor. We also do think that bumping him up into criminal history category four was too extreme. This young man had never been to prison at all before. And saying that he was the equivalent of a criminal history category four, we think, was just – she didn't point to anything that supported the magnitude of that variance. And if I could, I'd like to reserve the rest of my time for rebuttal. Very good. Thank you, Mr. Patton. Ms. Boyle, we'll move to you on behalf of the government. Good morning. May it please the court, counsel, my name is Catherine Boyle on behalf of the United States. The district court in this case offered a thoughtful and thorough explanation of her above-guideline sentence of 84 months that was consistent with the 3553A factors. First, she focused on the seriousness of Mr. Moultrie's offense. Mr. Moultrie is a felon who shot at people in another car. He hit that car and a second car. He then sped away from the scene. He fled from law enforcement into a house and then engaged in two-hour standoff with police. The district court correctly described this behavior as extremely volatile and risky. He was found to possess a firearm with an obliterated serial number. And the later excuse offered for his conduct that he thought he was shooting at a cop car, not the car of the victims, was, as the district court said, not acceptable. The district court also took into account Mr. Moultrie's very disturbing threats to witnesses and the apparent attempts to get witnesses to change their story when she was considering the seriousness of his offense. The district court looked at his personal history and characteristics, including his risk of recidivism. She noted the 27 to 2018 period where Mr. Moultrie's behavior was very alarming, incredibly alarming, she said. He exhibited a disrespect for authority. He broke the law. He failed to comply with state probation and state bond. And she also talked about the need for general deterrence in his case. The district court gave a very fulsome explanation of her sentence that did not represent an abuse of her discretion. Mr. Moultrie is making an argument that the analogies to the guidelines are problematic in this case. And when you look at the record, that argument really just doesn't hold water. The court here recognized that the guidelines range was calculated correctly and was advisory. Mr. Moultrie has made no allegation that her analysis was somehow inconsistent with the 3553A factors. And there is no case law or anything suggesting that a court can't analogize to the guidelines in attempting to explain the sentence they impose. In fact, it is a good way. Mr. Patton's argument. Would you like to address Mr. Patton's argument that this is in effect getting around the legal objection, which had earlier been said not to apply by seemingly taking it into effect, notwithstanding the earlier ruling? Well, I think there are a couple of things to unpack there, Your Honor. First of all, when the district court was talking about adding a two-level enhancement to the guideline offense level of 21, she wasn't just referring to the idea of the alleged witness tampering, although that was certainly a part of it under 3C1.1. She also mentioned the fact that the defendant had sort of gotten a general obstruction enhancement under 3C1.2 for his conduct in fleeing the car into the house and engaging in a standoff with police. And she noted that she believed that there were multiple actions he had committed in that respect that increased dangerousness to certain individuals that could have accounted for that increase. So she was sort of saying there were multiple bases for applying that two-level increase. And then she also went on to discuss the obstruction and the witness tampering issue. And I think it was the court trying to create a fair sentence that did not create disparities with other sentences. When you look at the conduct in this case in terms of his obstruction, particularly egregious, he had a phone call with his mother where they discussed one of the women who he had shot at changing her story. He told his mother to see if her associates could get the other witness to also change her story. And then his mother told him basically that she had it handled and she didn't want to talk about this over the phone knowing that they were being recorded. That evidence of obstruction, in addition to the other threats made against witnesses and the other problematic statements he made in jail phone calls, if not legally qualifying as obstruction, was certainly so close to the line that I think the district court very appropriately considered the egregiousness of that behavior. And whether, in fact, not sort of somehow accounting for that behavior in her sentence would be underrepresenting what Mr. Moultrie had done. And I think that was what was going on there. I don't think this was an attempt to get around a legal definition. This was an attempt on the part of the court to really take into account the pre-trial conduct of Mr. Moultrie, which was really very troubling to the court. Similarly, we don't see an issue with the court saying in light of Mr. Moultrie's risk of recidivism, she viewed him as more appropriately. She analogized that he was more appropriately in a criminal history category of four for the purpose of sentencing. She, as I noted earlier, she talked about this incredibly alarming period from 2017 to 2018. During that time period, Mr. Moultrie got a felony drug conviction. He's sentenced to probation. He's charged in a state case with armed violence and a cannabis offense because he possessed a Glock handgun and was dealing marijuana. He also shot at the victims in this case while he was on bond for that state firearms offense case. We think the district court here really provided an excellent explanation. The fact that it was grounded partially in an analogy to the guidelines was really an attempt by the district court to make sure that she didn't create sentencing disparities and that she was adequately able to take into account the full scope of Mr. Moultrie's conduct. We believe the court's analysis and the analogies made were thoughtful and aided in providing a fulsome explanation for the sentence. And we believe the sentence was substantively reasonable. If this court has no further questions, we'll rest on the arguments in our brief and ask that you affirm the judgment of the district court. Thank you, Ms. Boyle. Judge Ripple, we lost you for a few minutes there. Do you have questions which you would like to pose to Ms. Boyle on behalf of the government? No, thank you. I had no questions for Ms. Boyle. Thank you. We're going to move now back to Mr. Patton for rebuttal. Thank you, Your Honor. Just a couple of quick points. Ms. Boyle talked about the judge referring to Mr. Moultrie running from the police as being support for reckless endangering. This court has held that conduct cannot support a reckless endangering. Simply running from the police can't do it. Ms. Boyle talks about the mother's statement and the phone call in the jail from Mr. Moultrie and his mom. If the government felt that amounted to obstruction of justice, it had the opportunity to object to the PSR not including that. They didn't. It's just a little difficult to listen to them argue after they have decided to not take up that burden in the district court to prove that, to argue to this court that it's a ground for affirmance. Thank you. Thank you, Mr. Patton. Judge Ripple, any further questions for either advocate? No, thank you. Judge Barrett? No, not for me. Thank you, Mr. Patton. Thank you, Ms. Boyle. The case will be taken under advisement.